UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALTICOR, INC., et al.,

    Plaintiffs,

v.

AKASKI VALUE MAKING, LLC, et al.,

    Defendants.
_____/

Case No. 1:24-cv-526

Hon. Hala Y. Jarbou

## **OPINION**

Plaintiffs Alticor, Inc. and Amway Corporation allege that Defendants Akaski Value Making, LLC, Whiter Hormas Creation, LLC, and Huanqun Chen have sold products in violation of the Lanham Act, the Michigan Consumer Protection Act ("MCPA"), and common law. (Compl. ECF No. 1.) Defendants have not responded to the Plaintiffs' claims despite alternate service directed to Defendants' business accounts through Amazon.com. The Clerk of Court entered default due to Defendants' failure to plead or otherwise defend as required by the Federal Rules of Civil Procedure. (ECF No. 14.)

Before the Court is Plaintiffs' motion for default judgment. (ECF No. 20.) Plaintiffs seek a permanent injunction that prevents Defendants from making trademark-infringing and otherwise unlawful sales of products. Additionally, Plaintiffs seek $625,702.76 in disgorgement and an order requiring third-party Amazon.com to freeze all funds in Defendants' accounts to satisfy judgment. For the reasons discussed herein, the Court will grant Plaintiffs' motion in part.

Even after the Clerk of Court enters default against a defendant, a plaintiff is "not entitled to a default judgment as of right." 10A Charles Alan Wright & Arthur R. Miller, Federal Practice

and Procedure § 2685 (4th ed. 2024). The Court accepts Plaintiffs' factual allegations as true, but a party's default does not absolve the Court of its fundamental duty to evaluate legal claims. *Id.* ("[T]he district judge is required to exercise sound judicial discretion in determining whether the judgment should be entered."); *see also Kwik-Sew Pattern Co., Inc. v. Gendron*, No. 1:08-cv-309, 2008 WL 4960159, at *1 (W.D. Mich. Nov. 19, 2008) (collecting cases).

Plaintiffs have established this Court's subject matter and personal jurisdiction, bringing claims under federal law (Lanham Act) and alleging that Defendants have sold infringing products in Michigan (Compl. ¶¶ 13, 85). The Court will proceed with Plaintiffs' legal claims, accepting their allegations as true. *Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007) (citing *Brockton Savings Bank v. Peat, Marwick, Mitchell & Co.*, 771 F.2d 5 (1st Cir. 1985) ("There is no question that, default having been entered, each of plaintiff's allegations of fact must be taken as true . . . ." (cleaned up))).

## I. ANALYSIS

### A. Trademark Infringement (15 U.S.C. §§ 1114, 1125(a))

Plaintiffs claim Defendants violated the Lanham Act by infringing Plaintiffs' trademark rights. "[A] plaintiff alleging trademark infringement must show that '(1) it owns the registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to cause confusion.'" *Libertarian Nat'l Comm., Inc. v. Saliba*, 116 F.4th 530, 534 (6th Cir. 2024) (quoting *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)). Alticor owns—and has licensed to Amway—trademarks for AMWAY, NUTRILITE, and ARTISTRY. (Compl. ¶¶ 17-18.) Plaintiffs allege that Defendants have used the marks NUTRILITE and AMWAY in commerce without Plaintiffs' consent. (*Id.* ¶¶ 41-43, 45.) And Defendants used these marks to identify the source of the goods to consumers, a prerequisite for trademark infringement. *Bliss*

2

*Collection, LLC v. Latham Cos., LLC*, 82 F.4th 499, 509 (6th Cir. 2023) (citing *Hensley*, 579 F.3d at 610). The allegations plainly establish these first two elements.

Before reaching the third element of infringement, because Plaintiffs allege that—in some instances—Defendants acquired Plaintiffs' actual products and then resold them (Compl. ¶ 42), the Court must address an exception to trademark infringement. "[T]rademark law contains a 'first sale' exception that provides a defense to claims of infringement." *Brilliance Audio, Inc. v. Haights Cross Commc'ns, Inc.*, 474 F.3d 365, 369 (6th Cir. 2007) (citing *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368-69 (1924)). "Under the exception, resale by the first purchaser of the original trademarked item is generally neither trademark infringement nor unfair competition" unless (1) the alleged infringer provides inadequate "notice that the item has been repackaged," or (2) "the alleged infringer sells trademarked goods that are *materially different* than those sold by the trademark owner." *Id.* at 369-70 (emphasis in original). Plaintiffs contend the latter, alleging that Defendants used Plaintiffs' trademarks to sell altered, counterfeit, previously used, incomplete, and expired products. (Compl. ¶¶ 43-46.) Because a difference is material when "consumers consider [it] relevant to a decision about whether to purchase a product," *Brilliance Audio*, 474 F.3d at 370, and Plaintiffs allege that Defendants' alterations cause consumers to no longer want these products (Compl. ¶¶ 44, 46), Plaintiffs have alleged a material difference. Thus, so long as Plaintiffs allege Defendants' materially different products likely cause confusion, Plaintiffs have met their burden for default judgment on their federal trademark infringement claim.

"The touchstone of liability for trademark infringement is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Hensley*, 579 F.3d at 610 (quoting *Daddy's Junky Music Stores, Inc. v.*

3

*Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997)). To determine whether Defendants' use of the marks is likely to cause confusion, the Court typically weighs eight factors: "(1) the strength of the senior mark, (2) the relatedness of the goods or services, (3) the similarity of the marks, (4) evidence of actual confusion, (5) the marketing channels used, (6) the likely degree of purchaser care, (7) the intent of the defendant[s] in selecting the mark, and (8) the likelihood of expansion of the product lines." *Bliss Collection*, 82 F.4th at 509. "These factors," deemed the *Frisch* factors, "are meant to be 'helpful guides rather than rigid requirements.'" *Id.* (quoting *Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 509 (6th Cir. 2013)). "Ultimately, the question is 'whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way.'" *Id.* (quoting *Groeneveld*, 730 F.3d at 509).

Plaintiffs have met their burden, alleging that consumers are fooled into purchasing Defendants' products. As Plaintiffs allege, consumers want genuine products produced by Plaintiffs and are disappointed to receive altered, incomplete, or expired versions that are not subject to Plaintiffs' quality controls. (Compl. ¶ 44.) In some instances, consumers complained that they received counterfeits with a label that does not match—yet closely resembles—the advertisement bearing Plaintiffs' trademark. (*Id.*) Between the alleged strength of Plaintiffs' mark (that draws consumers to the products to begin with), the similarity of the marks (which is oftentimes identical), and the allegations of actual consumer confusion, Plaintiffs' allegations indicate consumers believe the products are affiliated. Consumers are confused by Defendants' use of Plaintiffs' trademark.

With each element of trademark infringement established in the complaint, and all allegations accepted as true, the Court will enter default judgment for trademark infringement against Defendants.

**B. Unfair Competition Under Lanham Act (15 U.S.C. § 1125(a)(1)(A))**

Plaintiffs also claim Defendants violated the Lanham Act by engaging in unfair competition. *See* 15 U.S.C. § 1125(a)(1)(A). "To prevail upon a[n] unfair competition claim, [Plaintiffs] must establish that [Defendants' conduct] creates a likelihood of confusion regarding the origin of goods or services offered by the respective parties." *Progressive Distrib. Servs., Inc. v. United Parcel Serv., Inc.*, 856 F.3d 416, 424 (6th Cir. 2017). Much like trademark infringement claims, to determine whether Defendants engage in unfair competition, the Court considers (1) the strength of the senior mark, (2) the relatedness of the goods or services, (3) the similarity of the marks, (4) evidence of actual confusion, (5) the marketing channels used, (6) the likely degree of purchaser care, (7) the intent of the defendant[s] in selecting the mark, and (8) the likelihood of expansion of the product lines.[1] *Id.* As discussed above, Defendants' use of Plaintiffs' marks caused confusion for consumers. Plaintiffs sufficiently established an unfair competition claim through their allegations.

**C. Trademark Dilution (15 U.S.C. § 1125(c))**

Distinct from the trademark infringement and unfair competition claims, Plaintiffs bring a trademark dilution claim under the Lanham Act. *See* 15 U.S.C. § 1125(c). To succeed on a trademark dilution claim, Plaintiffs must establish that their mark is famous—"widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." *Id.* § 1125(c)(2)(A). "In evaluating whether a mark is sufficiently

---

[1] While 15 U.S.C. § 1114 requires a plaintiff to have a registered mark, 15 U.S.C. § 1125 does not. *See T. Marzetti Co. v. Roskam Baking Co.*, 680 F.3d 629, 633 (6th Cir. 2012).

recognized, courts may consider the duration, extent, and reach of advertising and publicity around the mark; amount, volume, and extent of product sales; and actual recognition of the mark." *Kibler v. Hall*, 843 F.3d 1068, 1083 (6th Cir. 2016) (citing 15 U.S.C. § 1125(c)(2)(A)).

To succeed on a trademark dilution claim, "[c]ourts have interpreted the [Lanham] Act to require the mark to be a 'household name.'" *Id.* (quoting *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1373 (Fed. Cir. 2012)). "That is, 'when the general public encounters the mark in almost any context, it associates the term, at least initially, with the mark's owner.'" *Id.* (quoting *Coach*, 668 F.3d at 1373). "It is difficult to establish fame under the Act sufficient to show trademark dilution." *Id.* Marks like "Starbucks," "Audi," and "Louis Vuitton" garner the requisite recognition for a trademark dilution claim. *Id.* (collecting cases).

While Plaintiffs sufficiently alleged that their trademarks are strong and recognizable for their infringement and unfair competition claims, "it is easier to show public recognition under *Frisch* than it is under the Lanham Act." *Id.* Plaintiffs allege that the AMWAY trademark was registered over 50 years ago, becoming well-recognized by the American public. (Compl. ¶¶ 142, 145-47.) But these conclusory allegations about the trademark's fame do not demonstrate the requisite popularity and recognition to support a trade dilution claim. The complaint does not include allegations detailing the reach of Plaintiffs' trademark, the amount or volume of sales, nor its actual recognition from consumers. The allegations do not indicate the AMWAY trademark is on par with marks like Starbucks, Audi, or Louis Vitton; Plaintiffs have not established the requisite fame for a trademark dilution claim.

### D. Common Law Trademark Infringement and Unfair Competition

Plaintiffs' common law trademark infringement and unfair competition claim is evaluated under the same standard as their federal trademark claim. *Hensley*, 579 F.3d at 609 n.5 (explaining that federal and common law trademark claims apply the same likelihood of confusion test); *see*

6

*also Kassa v. Detroit Metro Convention & Visitors Bureau*, 150 F. Supp. 3d 831, 841 (E.D. Mich. 2015) (collecting cases). As explained above, Plaintiffs' allegations satisfy this standard; Plaintiffs have established a common law claim of trademark infringement and unfair competition.

### E. Unfair Competition Under MCPA (Mich. Comp. Laws § 445.901 et seq.)

Much like Plaintiffs' common law claims, "[t]he same legal standard under the Lanham Act applies to the MCPA." *Golden Star Wholesale, Inc. v. ZB Importing, Inc.*, 531 F. Supp. 3d 1231, 1253 (E.D. Mich. 2021) (collecting cases). Thus, because Plaintiffs have established an unfair competition claim under federal law, they have done the same for an unfair competition claim under the MCPA.

### F. Tortious Interference with Existing Contracts and Business Relationships

Finally, Plaintiffs bring a claim against Defendants for tortious interference. To state a tortious interference claim under Michigan law, Plaintiffs must "show 'the existence of a valid business relationship or expectancy, knowledge of the relationship or expectancy on the part of the defendant, an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the plaintiff.'" *Kuhn v. Washtenaw County*, 709 F.3d 612, 630 (6th Cir. 2013) (quoting *Mino v. Clio Sch. Dist.*, 661 N.W.2d 586, 597 (Mich. Ct. App. 2003)). Plaintiffs "must also 'establish that the defendant was a third party to the contract or business relationship.'" *Id.* (cleaned up) (quoting *Reed v. Mich. Metro Girl Scout Council*, 506 N.W.2d 231, 233 (Mich. Ct. App. 1993)). Plaintiffs are unable to establish all the requisite elements. Notably, Plaintiffs cannot establish that Defendants intentionally induced or caused a breach of Plaintiffs' business relationships with Independent Business Owners ("IBOs").

Plaintiffs argue that they sent cease and desist letters to Defendants explaining that IBOs were contractually prohibited from selling products to entities that would later resell those products on Amazon. So the argument goes, by acquiring Plaintiffs' products from IBOs, then turning

7

around and reselling those products on Amazon, Defendants were inducing IBOs to breach their contracts with Plaintiffs. But Plaintiffs fail to allege that Defendants actually received the cease-and-desist letters. Defendants never responded to the letters (Compl. ¶ 77), and Plaintiffs acknowledge that Defendants likely have no connection to the addresses where Plaintiffs sent these letters. (Compl. 78-83.) In fact, Plaintiffs used an alternate method of service in this matter because Amazon's online messaging system was, purportedly, the only way to properly communicate with Defendants. (Mot. for Alternate Service, ECF No. 8.) Alternatively, Plaintiffs allege it is common knowledge that their products are not sold on Amazon, so Defendants must have been aware of their tortious interference with Plaintiffs' business relationships. This conclusory allegation will not suffice, and it is at odds with Plaintiffs' argument that customers were confused by Defendants' sales on Amazon. If, as Plaintiffs contend, their no-Amazon-sales policy is common knowledge, then consumers would not be confused as to the origin of Defendants' products (they would know the products were not authentic or, at the very least, not subject to the same quality controls). Plaintiffs have not sufficiently alleged Defendants' intentionally caused any contractual breaches. Thus, they have not established a claim for tortious interference.

### G. Requested Relief

As indicated above, Plaintiffs seek a permanent injunction that prevents Defendants from making trademark-infringing and otherwise unlawful sales of products, $625,702.76 in disgorgement, and an order requiring third-party Amazon.com to freeze all funds in Defendants' accounts to satisfy judgment.

First, the Court will address Plaintiffs' requested injunction. Under the Lanham Act, the Court may grant an injunction "according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a [registered mark]

or to prevent a violation under subsection (a), (c), or (d) or section 1125." 15 U.S.C. § 1116(a). To obtain such relief, Plaintiffs must show that (1) they suffered irreparable injury; (2) remedies at law are not adequate to compensate for that injury; (3) the balance of hardships between the parties weighs in favor of an injunction; and (4) an injunction is in the public interest. *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006).

With these factors in mind, Plaintiffs are entitled to a permanent injunction. First, because Plaintiffs established that Defendants infringed upon the rights of Plaintiffs' registered trademark, there is a "rebuttable presumption of irreparable harm." 15 U.S.C. § 1116(a). Second, remedies at law are not adequate for future trademark infringement. *Audi AG*, 469 F.3d at 550-51. Third, the balance of hardships weighs in Plaintiffs' favor because an injunction would only target Defendants' infringing products. Finally, it is in the public interest to enforce federal trademark law and to prevent consumers from being misled regarding the nature of Defendants' counterfeit and altered products. The Court will grant the requested injunction.

Second, the Court will address Plaintiffs' damages request. "Where, as here, the damages sought are not for a sum certain, the Court must determine the damages." *GS Holistic, LLC v. Googy Baba LLC*, No. 1:23-cv-1263, 2024 WL 4343446, at *2 (W.D. Mich. Sep. 30, 2024) (citing Fed. R. Civ. P. 55(b)). "[S]ubject to the principles of equity," under the Lanham Act, Plaintiffs are entitled "to recover (1) [Defendants'] profits, (2) any damages sustained by [Plaintiffs], and (3) the costs of the action." 15 U.S.C. § 1117(a). "In assessing profits [Plaintiffs] shall be required to prove [Defendants'] sales only; [Defendants] must prove all elements of cost or deduction claimed." *Id.* "In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount." *Id.*

9

"The Court may rely on affidavits submitted on the issue of damages." *P&G Health & Longterm Disability Plan v. Molinary*, No. 1:18-cv-283, 2019 WL 358936, at *1 (S.D. Ohio Jan. 29, 2019). Plaintiffs submitted an affidavit indicating that Defendants collected $625,702.76 in sales from the infringing and otherwise unlawful products. (Britt Aff. ¶¶ 10-11, ECF No. 21-1.) Because Plaintiffs need only prove sales, and Defendants must prove all elements of cost or deduction, the Court will award Plaintiff damages in the amount $625,702.76. Should Defendants present evidence of costs or deductions, the Court can amend the judgment if necessary.

Finally, Plaintiffs seek an order that forces third-party Amazon.com to freeze all funds in Defendants' Amazon accounts. However, Plaintiffs do not provide any binding authority, nor any persuasive arguments, supporting this broad request for action against a third-party that may implicate assets unrelated to this case. Instead, the Federal Rules of Civil Procedure direct courts to look to state law for remedies that "provide[] for seizing . . . property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64. And Plaintiffs do not explain why the garnishment process available under Michigan law would be insufficient to secure satisfaction of this judgment. Accordingly, the Court will not order an asset freeze on Defendants' funds with third-party Amazon.com at this time.

## II. CONCLUSION

By using Plaintiffs' trademarks to sell altered and counterfeit products, Defendants engaged in unlawful trademark infringement and unfair competition under the Lanham Act, unfair competition under the MCPA, and unfair competition under common law. However, Plaintiffs' allegations do not establish violations of trademark dilution or tortious interference with existing contracts and business relationships. The Court will enter default judgment against Defendants for the violations described above.

To remedy these violations, the Court will enter a permanent injunction preventing Defendants from engaging in this unlawful conduct and order disgorgement of $625,702.76.

The Court will enter an order consistent with this Opinion.

Dated: July 7, 2025  /s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE